

FILED
2015 Nov-18 AM 08:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| KENNETH RAY KYSER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No. 7:14-cv-01506-HGD |
| ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

This matter is before the undersigned United States Magistrate Judge based upon the consent of the parties pursuant to 28 U.S.C. § 636(c) and LR 73.2. Plaintiff, Kenneth Ray Kyser, protectively filed for a period of disability, disability insurance benefits and Supplemental Security Income (SSI), alleging that he was disabled beginning June 15, 2010 (Tr. 129-39, 151). The applications were administratively denied and plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 98). The ALJ held a hearing on August 22, 2012 (Tr. 38-79) and issued a decision on October 19, 2012, finding plaintiff not disabled under the Social Security Act (Tr. 8-24). The Appeals Council denied review on May 30, 2014. (Tr. 1-3). Plaintiff has requested judicial review pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **ALJ Decision**

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC

to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Following this protocol, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2015, and that he has not engaged in substantial gainful activity since June 15, 2010. (Tr. 14). The ALJ found that plaintiff has the severe impairments of degenerative arthritis of the right knee, low back pain, type II diabetes mellitus, hypertension and obesity. (*Id.*). Nonetheless, he also concluded that plaintiff does not have an impairment or combination of impairments that meets or equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (Tr. 18).

After a review of the evidence and testimony, the ALJ concluded that plaintiff has the residual functional capacity to perform light work that allows him to stand and/or walk two hours at a time and sit up to two hours at a time. He cannot use his right leg for pushing or pulling movements. He can occasionally bend and stoop but should not climb. He also determined that plaintiff should not work from unprotected heights or around hazardous machinery, should not drive and should work in a temperature controlled environment. (Tr. 19).

Based on this RFC and the testimony of a vocational expert (VE), the ALJ found that plaintiff can perform the jobs of cashier II, bench assembler and inspector/packer, which are occupations that exist in significant numbers in Alabama and nationwide. (Tr. 23-24).

## II. Plaintiff's Argument for Reversal

Plaintiff asserts that the ALJ failed to properly evaluate the credibility of the plaintiff's testimony of disabling symptoms consistent with the Eleventh Circuit Pain Standard. (Doc. 13, Plaintiff's Brief, at 4). In support of this claim, counsel for plaintiff notes that plaintiff testified that he can only sit for 15 to 20 minutes at a time, stand 10-20 minutes at a time and walk about 75-80 feet before needing to rest. (*Id.* at 4; Tr. 50, 63). He testified that he could lift about 15 pounds comfortably and that he helps his wife with the dishes and folding clothes, but that he could not stand long to do it. (Tr. 51,

53). Counsel also notes that the medical records reflect that plaintiff has knee pain that worsens while moving and walking, had a limited range of motion and was slow rising from sitting to standing, and that x-rays showed a significant narrowing of the medial compartment of his right knee. The only operative procedure that would help this situation was a total knee replacement. (Tr. 417).

Plaintiff states that this evidence and the results of a consultative medical exam reflect that the ALJ's determination that he is capable of light work with certain limitations is inconsistent with the medical evidence. (Doc. 13, Plaintiff's Brief, at 6).

### III. Discussion

In his decision, the ALJ notes that the medical records reflect that on June 11, 2011, plaintiff underwent a consultative medical examination performed by Dr. David Brower, M.D., a neurologist. Plaintiff reported having fatigue, weakness, back pain, shortness of breath and bilateral feet swelling. He reported that he could perform his own personal care, drive and shop. During the day, he sat in a recliner, watched television, and read the Bible. At that time he weighed 245 pounds at a height of 68 inches. His blood pressure varied from 162/110 to 190/110, and plaintiff was short of breath and perspiring.

Dr. Brower noted that plaintiff demonstrated a non-antalgic gait and negative Romberg. He also had a normal range of motion of the cervical spine, lumbar spine,

upper extremities and lower extremities, negative straight leg raise testing in the seated and supine positions, and 5/5 motor strength and normal muscle bulk with tone in the upper and lower extremities. (Tr. 15). Dr. Brower reported that plaintiff likely had congestive heart failure. However, he did not report any testing to confirm or eliminate this possibility at that time. (*Id.*; Exhibit 7F).

On June 15, 2011, plaintiff sought treatment in the emergency room for hypertension and chest tightness. He had a blood pressure reading of 162/100. A chest x-ray showed no significant abnormalities and no congestive heart failure. An electrocardiogram showed a minor T-wave variation and normal sinus rhythm. He was prescribed Lisinopril. (Tr. 15; Ex. 5F).

On June 21, 2011, plaintiff was again seen in the emergency room and then admitted overnight because of increased chest pain associated with heart activity, heart palpitations, shortness of breath and elevated blood pressure readings. He was assessed with hypertension and chest pain. An electrocardiogram and cardiac markers were unremarkable. An examination showed regular heart rate and rhythm without murmurs, gallops, rubs or clicks. His blood pressure improved with medication, and a stress echocardiogram showed no evidence of myocardial ischemia.

On June 22, 2011, plaintiff was discharged in improved condition. (Exhibits 8F and 9F). A follow-up visit at Good Samaritan Clinic on June 28, 2011, showed that he

had a blood pressure reading of 158/100. He reported having an episode of chest pain that improved after he took his medication. (Ex. 11F).

Plaintiff's medical records also reflect that he had office visits with Dr. Vernon Scott in October 2011. He had issues with hyperglycemia and hyperlipidemia that Dr. Scott reported could improve with diet and exercise. He had hypertension with blood pressure readings of 140/84 and 140/90. He weighed 255 pounds at a height of 67.5 inches. He reported having right knee and back pain. Examination showed regular heart rate without heart sounds or murmur. His reflexes were normal. (Ex. 17F).

On November 8, 2011, plaintiff saw Dr. Lucie King, M.D., for evaluation of his right knee. On examination, he had no effusion of the knee. There was tenderness at the medial joint line with some hypertropic spurs palpitated. Dr. King noted that plaintiff demonstrated normal range of motion of his right knee but had pain in the knee area with varus stress testing. He had varus position of the right knee. A right knee x-ray showed some sclerosis at the medial and lateral joint lines. There was a loss of medial compartment with weight bearing.

Dr. King assessed plaintiff with degenerative arthritis of the right knee. She recommended a total joint arthroplasty to relieve his symptoms. However, plaintiff declined surgical treatment and opted to continue taking over-the-counter medications. (Ex. 16F).

Plaintiff takes issue with the ALJ's findings with regard to the credibility of plaintiff's pain and the extent to which he is disabled. A reviewing court may not re-weigh the evidence, and credibility determinations are the province of the ALJ. *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). When a claimant attempts to establish disability through his or her own testimony about his/her subjective symptoms, a three-part "pain standard" applies. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The pain standard requires: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* If the ALJ determined that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms, then the ALJ evaluates the extent to which the intensity and persistence of those symptoms limit her ability to work. 20 C.F.R. § 404.1529(b). At this stage, the ALJ considers the claimant's history, the medical signs and laboratory findings, the claimant's statements, statements by treating and non-treating physicians, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id.* § 404.1529(a). The ALJ applied this standard in this case. (Tr. 19-20).

A claimant's testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). If the ALJ decides not to credit a claimant's testimony about his or her symptoms, the ALJ "must articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective pain testimony requires . . . that the testimony be accepted as true." *Id.* at 1561-62.

The ALJ found that plaintiff did have evidence of an underlying medical condition that caused him pain, but not to the severity plaintiff alleges. In regard to this particular condition, the ALJ stated:

> The documentary record in this case does not support the existence of disabling limitations as the result of the claimant's medically determinable impairments. Specifically, it is asserted that Mr. Kyser can not work on account of right knee pain and swelling; low back pain radiating into his lower extremities; hypertension and diabetes. The allegations, however, fail to withstand close scrutiny when examined by the cumulative evidence of record. The medical evidence shows very isolated treatment for pain affecting the right knee and back. Clinical findings show normal range of motion of the cervical spine, lumbar spine and the extremities. There was no CVA or spinal tenderness. The claimant was neurologically intact with negative straight leg raise testing, 5/5 motor strength, intact sensation, and 2+ deep tendon reflexes. He had no obvious joint or bony abnormalities. He had tenderness, but no effusion of the right knee. Mr. Kyser has opted for conservative treatment of his right knee consisting mainly of taking over-the-counter medications and only using prescribed pain medication when his pain is unbearable. Although there are clinical findings and electrodiagnostic imaging confirming degenerative arthritis of the right knee joint, there is no convincing evidence that the claimant's degenerative arthritis causes disabling limitations to the point that he could not engage in all forms of substantial gainful activity.

> The claimant's hypertension and diabetes appear responsive to prescribed medication treatment. He does not have any cardiac problems or end organ damage due to uncontrolled hypertension. There are no manifestations of diabetic retinopathy or neuropathy associated with his diabetes. The claimant has reported no adverse side effects from his anti-hypertensive and diabetic medications and none are reflected in the record. The preponderance of evidence, including reports from examining and treating physicians, as well as the claimant's admitted activities of daily living, do not support the degree of disabling pain and limitations presently asserted.

(Tr. 21).

The ALJ stated that he also considered the opinions of Robert Heilpern, M.D., the non-examining state agency physician who concluded that plaintiff could perform a restricted range of medium work. (Ex. 7F). According to the ALJ, additional evidence received at the hearing level shows that plaintiff was more limited than previously determined. The ALJ does not state specifically what this evidence was; however, he accorded Dr. Heilpern's opinion no weight because of it. (Tr. 22).

He also accorded minimal weight to the statement by LaToya Russell, a certified nurse practitioner. Although she reported that plaintiff's medical conditions made it difficult for him to participate in the work place, she provided no quantitative limitations in the plaintiff's ability to perform basic work activities. (*Id.*).

Thus, it is clear that the ALJ followed the Eleventh Circuit's pain standard in reaching his conclusion. He properly reasoned that the objective medical evidence was not consistent with plaintiff's allegations of disabling limitations. The ALJ considered

the medical record which showed very isolated treatment fo pain affecting plaintiff's right knee and back. As noted above, physical examinations showed normal range of motion of the lumbar spine and extremities, no CVA or spinal tenderness, and no obvious joint or bony abnormalities. (Tr. 21, 227, 262, 417, 427). Plaintiff was also neurologically intact with negative straight leg raising, full 5/5 strength, intact sensation, and normal reflexes. (Tr. 21, 242, 262, 281, 422, 427). A November 2011 examination of his right knee showed tenderness but no effusion. (Tr. 21, 417). In addition, despite his testimony to the contrary at his hearing, plaintiff denied episodes of his knee giving way. (*Compare* Tr. 46 *with* Tr. 417). *See* 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (noting that in evaluating a claimant's subjective statements, consideration is also given to any conflicts between the claimant's statements and the rest of the evidence).

The ALJ also noted that plaintiff opted for conservative treatment by using over-the-counter medications for pain rather than having surgery to correct his right knee impairment. *See* 20 C.F.R. §§ 404.1529(c)(3)(vi) and 416.929(c)(3)(vi) (providing an ALJ may consider measures a claimant takes to relieve pain or symptoms). *See also Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (affirming an ALJ's adverse credibility determination where ALJ reasoned, in part, that plaintiff's treatment was conservative in nature). Thus, the fact that plaintiff suffers from degenerative arthritis in his right knee does not, in and of itself, establish that plaintiff has disabling limitations.

*See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

The ALJ also considered plaintiff's other medical conditions, including his diabetes, obesity and hypertension, and noted that the diabetes and hypertension were controlled by medication and that there was no evidence that plaintiff's obesity was disabling. In addition, the ALJ considered plaintiff's daily activities when analyzing plaintiff's credibility. (Tr. 20-21). The regulations for determining credibility expressly allow an ALJ to consider a claimant's daily activities. *See* 20 C.F.R. §§ 404.1529(c)(3)(i) and 416.929(c)(3)(i). *See also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("20 C.F.R. § 404.1572(c) provides that activities such as 'household tasks, hobbies, therapy, school attendance, club activities, or social programs' are generally not considered 'substantial gainful activity.' This regulation prevents the determination of non-disability at the first step of the sequential evaluation process on the basis of daily activities. 20 C.F.R. § 404.1520(b). The regulations do not, however, prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process. *See* 20 C.F.R. § 404.1520(e).").

The ALJ noted that plaintiff takes care of his own personal needs, washes dishes and shops for groceries. (Tr. 20, 166-69, 240). Plaintiff also reported that he handles

finances, watches television, reads his Bible and attends church three times a week. (Tr. 20, 168-69, 240). Plaintiff also testified that he drives four or five times a week around town and to church. (Tr. 20, 67). All of these activities reflect that he is capable of doing light work as limited by the RFC established by the ALJ. Although plaintiff challenges the ALJ's evaluation of his subjective complaints, he has failed to identify an opinion from an acceptable medical source that conflicts with the ALJ's RFC finding. The only acceptable medical source to state an opinion regarding plaintiff's physical level of functioning was Robert Heilpern, M.D., a State agency non-examining physician, who found plaintiff was less limited than the ALJ. (Tr. 22, 399-406). It was Dr. Heilpern's opinion that plaintiff could perform a range of medium work with no postural, manipulative, visual or environmental limitations. (Tr. 400-03).

Accordingly, upon review of the administrative record, and considering all of the plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Therefore, that decision is due to be affirmed. A separate order will be entered.

DONE this 18th day of November, 2015.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE